467 F.2d 1158
 81 L.R.R.M. (BNA) 2483, 69 Lab.Cas. P 13,125
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
LOCAL UNION NO. 3, INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, AFL-CIO, Respondent, and New York
Telephone Company, Intervenor.
 No. 15, Docket 72-1127.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 21, 1972.
Decided Oct. 17, 1972.
 
 Roger C. Hartley, Atty., NLRB, Washington, D. C. (Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Elliott Moore, Atty., NLRB, Washington, D. C., of counsel), for petitioner.
 Norman Rothfeld, New York City (Harold Stern, New York City, of counsel), for respondent.
 Saul G. Kramer, New York City (Proskauer, Rose, Goetz & Mendelsohn, Edward Silver and Harvey S. Berenson, New York City, and G. Wallace Bates and William P. Witman, New York City, New York Telephone Co., of counsel), for intervenor.
 Before SMITH, KAUFMAN and MANSFIELD, Circuit Judges.
 PER CURIAM:
 
 
 1
 The National Labor Relations Board petitions for enforcement of its order against Local 3, International Brotherhood of Electrical Workers, AFL-CIO. The order is based on a finding that the respondent union violated section 8(b)(4)(i) and (ii)(B) of the National Labor Relations Act, 29 U.S.C. Sec. 158(b)(4)(i) and (ii)(B). The violation consisted of threats against electrical subcontractors to pull union members off construction work at two sites if New York Telephone Company employees were permitted to pull cable in telephone installation, work claimed for craft members.
 
 
 2
 The union contests the order on the ground that Local 3 neither authorized nor ratified its members' action on which the order is based. The objection is not well taken. Actual authorization or subsequent ratification is not required under the Act to hold a person responsible for the acts of another as agent. 29 U.S.C. Sec. 185(e) (1970). Common law rules of agency govern; authority may be implied or apparent, as well as express. See NLRB v. Local 815, International Brotherhood of Teamsters, etc., 290 F.2d 99, 103-104 (2d Cir. 1961).
 
 
 3
 The record reveals substantial evidence to support the Board's findings that the three union members, steward Allen, and foremen Smith and Fedor, acted within the scope of their authority in violating the secondary boycott provisions of the Act. Allen was appointed pursuant to the collective bargaining agreement between the electrical subcontractor at the Queensborough site and Local 3, and was responsible as steward for reporting any encroachment upon the work jurisdiction of the Local. Union by-laws moreover prohibit any member "to allow any other tradesman to do work coming under [the] Local's jurisdiction"; failure to protect union work claims can result in a penalty levied by the Executive Board. Stewards are additionally liable for a fine to be assessed by the Executive Board for violation of this duty.
 
 
 4
 When confronted by the Telco workers who had arrived on the site to pull cable and install terminal boxes, Allen claimed the work for the electrical workers and threatened to close down the job if the claim were not respected. The electrical workers union, after sixty years of doing such work for Telco, considered cable pulling within its jurisdiction, and has in other cases attempted to protect its work by actions similar to those here at issue. See NLRB v. Local 25, International Brotherhood of Electrical Workers, 396 F.2d 591 (2d Cir. 1968); NLRB v. Local Union No. 3, International Brotherhood of Electrical Workers, 339 F.2d 145 (2d Cir. 1964).
 
 
 5
 Smith, claiming the cable work for the electrical workers, barred the Telco workers from the room where the installation was to be done. While not a union steward, Smith was under the same obligation to protect union work, and to notify union supervisors of any non-union tradesman work.
 
 
 6
 Although the union failed to appoint a steward at the Thompson Avenue site as required by its collective bargaining agreement, foreman Fedor who threatened the Telco workers and the general contractor, carried out the duties of a steward. Vianelli, superintendent of the general contractor, in fact believed Fedor to be the appointed steward. The Board, discrediting Fedor's denials, found, and the evidence substantially supports, that the foreman identified himself as steward to the Telco workers when he claimed the work for the electrical workers. As foreman Fedor was also responsible for and did notify his union supervisors of the infringement of union jurisdiction, Fedor's action was in the scope of his authority. The union placed Fedor in a position of authority in which as foreman, he also acted as steward. That he may have exceeded his authority in claiming to be steward does not affect his apparent authority, when he acted as such. See NLRB v. Local 815, International Brotherhood of Teamsters etc., supra, 290 F.2d at 103. Allen, Fedor and Smith were each obligated to protect the jurisdiction of the union under threat of penalty for failure to do so. Each believed the appearance of Telco workers to be a threat to union jurisdiction, notified his supervisor of the interference and took action to prevent the infringement. Even if the agent in carrying out the union's policy used means proscribed by the principal, it would not necessarily excuse the union from responsibility. Sheet Metal Worker's Intern. Ass'n v. NLRB, 110 U.S.App.D.C. 302, 293 F.2d 141, 149, cert. denied, 368 U.S. 896, 82 S.Ct. 172, 7 L.Ed.2d 92 (1961). Protection of union work claims clearly is a policy of Local 3. Moreover, the union has taken no disciplinary action against the three men.
 
 
 7
 The union also claims that there was no attempt to cause a cessation of business between the general contractor and the telephone company. Such a goal, the union suggests, is totally unrealistic in view of the telephone company's monopoly on an essential service. However, the purpose of a secondary boycott need not be total cessation of business to violate the Act. A threatened work stoppage of a neutral employer for the purpose of effecting a change in work assignment of the primary employer is a violation of Sec. 8(b)(4)(ii)(B). NLRB v. Local 825, International Union of Operating Engineers, AFL-CIO, 400 U.S. 297, 304-305, 91 S.Ct. 402, 27 L.Ed.2d 398 (1971). Secondary activity with a limited goal and foreseeably minimal disruption might not constitute cessation of business. However, the action threatened in this case was more than a minimal disruption: Fedor threatened to shut off the power and close down the entire Thompson Avenue Project; Allen threatened to have the electricians walk off the job. While the actual disruption was not great, the de minimis effect was the result of capitulation by the secondary employers to a threat of greater disruption. Circumvention of the Act through the use of threats rather than action against secondary employers may not be permitted. NLRB v. Local 825, International Union of Operating Engineers, supra, at 303-304, 91 S.Ct. 402.
 
 
 8
 Enforcement granted.